UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**
20-cr-335-JMA

-against-

SEAN NOVIS,

Defendant.

----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Before the Court are pro se motions by Defendant Sean Novis ("Defendant") for (1) the appointment of counsel and (2) a reduction of his sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("compassionate release"). (ECF No. 180 ("Mot").) The Government opposes both motions. (ECF No. 181 ("Gov. Opp.").) Defendant timely responded. (ECF No. 182 ("Def. Reply.") For the reasons set forth below, the Court DENIES Defendant's motions.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history of this matter and only repeats here those facts relevant to the present motion. The Court also refers to the facts set forth in its prior orders. (See, e.g., ECF No. 128 (7/24/2023 Order denying Defendant's Rule 29 motion); ECF No. 159 (10/6/2023 Order denying Defendant's motion for bail pending appeal); ECF No. 168 (5/14/2024 Order denying Defendant's motion for a sentence reduction).)

In an indictment filed on August 25, 2001, a federal grand jury in the Eastern District of New York returned a 19-count superseding indictment charging Defendant and a codefendant, Gary Denkberg, (together, "Defendants"), with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349 (Count 1); six counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2–

7); four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 8–11); four counts of use of fictitious names and titles in violation of 18 U.S.C. § 1342 (Counts 12–15); and four counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341 (Counts 16–19). (See Superseding Indictment, ECF No. 33.)

Defendants proceeded to trial on April 26, 2022. The evidence presented at trial showed that, from January 2003 to September 2016, Defendants ran a mass mailing fraud scheme in which they tricked victims into providing them with money by falsely promising prizes, which the victims never received. (See ECF No. 128 at 2.) The scheme generated approximately $80 million in revenue from thousands of victims. (Id.) The evidence at trial also showed that, while running their own fraud scheme, Defendants also shared employees and customer mailing lists with three other individuals, who ran similar prize notice schemes—including Jeffrey Novis, Defendant's father.[1] (See id.; see also Trial Tr. 115, 519–520, 521.) That conduct was the basis for aiding and abetting charges in Counts 16 through 19 of the Superseding Indictment.

After a three-week trial, a jury found Defendant guilty on all 19 counts. (See ECF No. 96.) On August 3, 2023, this Court sentenced Defendant to 90 months of imprisonment, to be followed by two years of supervised release. (See ECF No. 137, at 3–4.) The Court further ordered the Defendant to pay a $500,000 fine and $60,503,668 in forfeiture. (Id. at 7; see Ex. 1 at 1, ECF No. 137-1.) On August 14, 2023, Defendant filed a Notice of Appeal from his sentence and judgment. (ECF No. 143.) On June 2, 2025, the Second Circuit denied Defendant's appeal and affirmed his and Denkberg's convictions on all counts, finding, inter alia, that sufficient evidence supported

[1] In November 2021, a grand jury indicted Jeffrey Novis and two codefendants for running a similar prize notice scheme. See United States v. Phillips et al., No. 21-cr-566 (E.D.N.Y.). One of his codefendants, Philip Priolo, proceeded to trial and was convicted in March 2025. Id., ECF No. 156. In October 2025, a jointly appointed forensic expert concluded that Jeffrey Novis has a neurodegenerative disease and cannot be restored to competence. Id., ECF No. 207. Both parties agree that Jeffrey is not competent to stand trial, but most recently, the court granted defense counsel's motion challenging his commitment pursuant to 18 U.S.C. § 4241(d)'s mandatory commitment provision. Id.; see ECF Nos. 215–17. In 2001, Jeffrey Novis was sentenced for conspiracy to commit mail fraud pursuant to 18 U.S.C. § 371 in another prize-notice scheme. See United States v. Jeffrey Novis and David Dobin, 95-cr-250 (E.D.N.Y. 1995).

their convictions, including evidence from which a reasonable jury could find that they possessed the requisite intent to defraud, and that the elaborate fake prize notices they sent to victims materially misrepresented benefits reasonably anticipated of the transactions. See United States v. Denkberg, 139 F.4th 147, 154–59 (2d Cir. 2025). The Second Circuit also found that the evidence was sufficient to convict Defendants of aiding and abetting the other individuals, including Jeffrey Novis, in their prize notice schemes. Id. at 159–60.

Over a year earlier, on February 9, 2024, Defendant had filed a pro se motion under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, asking for a two-point reduction in his sentence based on the "zero-point offender" amendment to the U.S. Sentencing Guidelines ("Guidelines"). (ECF No. 164.) The Court denied Defendant's motion, finding that it lacked jurisdiction because Defendant's appeal from his sentence and judgment was then pending before the Second Circuit. (ECF No. 168.) In the alternative, the Court found that Defendant's motion failed on the merits, reasoning that the "zero-point" offender amendment provided a decrease in offense level for zero-point offenders (offenders, like Defendant, who had no criminal history points) only where the offense did not involve specific aggravating factors. Here, however, the Court found that Defendant was ineligible for a sentence reduction because multiple aggravating factors were present. Namely, the Court at sentencing had determined that Defendant was subject to two Vulnerable Victim enhancements because (1) he knew that the victims of his prize scheme were elderly and vulnerable pursuant to U.S.S.G. § 3A1.1(b)(1), and (2) the offense involved many vulnerable victims under U.S.S.G. § 3A1.1(b)(2)). The Court also determined the four-level Aggravating Role enhancement was warranted because Defendant was "the leader and organizer of the fraud scheme with at least five participants and that was otherwise extensive." (Id. at 5–6 (citing Sentencing Transcript at 41–42).)

On June 2, 2026, Defendant filed the instant motion. (See ECF No. 180.) Defendant moves for compassionate release under 18 U.S.C. §§ 3582(c)(1)(A) and requests that the Court appoint him counsel to assist in the motion. (Id.) In support of his request for compassionate release, Defendant argues that his elderly father's health has rapidly deteriorated and that Defendant is the "only available family member" who can care for him. (Id. at 2.) The Government opposes Defendant's motions, arguing that (1) there is no right to counsel in this proceeding and the Court should not in its discretion appoint counsel; (2) Defendant has failed to show he exhausted his administrative rights with the Bureau of Prisons ("BOP") before filing his motion for compassionate release; (3) Defendant's motion fails on the merits because Defendant fails to show he is the only available family member to care for his father; and (4) the 18 U.S.C. § 3553(a) factors independently require denial. (Gov. Opp. at 1.)

## II. DISCUSSION

Unless an exception applies, a "court may not modify a term of imprisonment once it has been imposed." United States v. Pinto-Thomaz, No. 18-cr-579, 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020) (quoting 18 U.S.C. § 3582(c)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute provides courts with discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United

States v. Canales, No. 16-cr-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, No. 19-cr-3218, 2020 WL 5739712, at *7 (2d. Cir. Sept. 25, 2020) (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."); see also Simon v. United States, No. 07-CR-474, 2020 WL 5764322, at *2-3 (S.D.N.Y. Sept. 28, 2020) (quoting Brooker, 2020 WL 5739712, at *7).

Even if extraordinary and compelling reasons exist, a "court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-cr-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020); see also Simon, 2020 WL 5764322, at *3.

A defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-cr-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020). Because Defendant is proceeding pro se, the Court construes his submissions "liberally and interpret[s] them 'to raise the strongest arguments they suggest.'" Rahmankulov v. United States, 2023 WL 3303949, at *1 (S.D.N.Y. May 8, 2023) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)) (internal quotation marks and citations omitted).

Regarding Defendant's request for the appointment of counsel, "a defendant has no right to the assistance of counsel in filing a motion for compassionate release or appealing from the denial of such a motion." United States v. Fleming, 5 F.4th 189, 193 (2d Cir. 2021). "The provision of counsel for such motions should rest in the discretion of the district court." United States v. Reddick, 53 F.3d 462, 465 (2d Cir. 1995); see id. (noting that "[t]he apparent merits of the motion will no doubt be a significant factor in the exercise of that discretion.").

**A. Exhaustion**

Initially, the Government argues that Defendant has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) because he has failed to show that he "exercised his right to appeal through the Administrative Remedy process to either the appropriate BOP Regional Director or the BOP General Counsel." (Gov. Opp. at 5.) The Government also states that it "has communicated with the BOP's regional counsel, who confirms that Novis has not filed any appeals in the BOP's Administrative Remedy program." (Id. at 4.) Defendant argues that the statute requires only that a defendant wait thirty days from the date the warden receives the request for sentence reduction before filing the motion in federal court. (See Def. Reply at 2.) Defendant attaches to his motion two separate denials received from his warden, dated September 11, 2025 and February 2, 2026, respectively, concerning compassionate release motions that Defendant previously filed and that appear to be based on the same facts at issue here. (See ECF No. 180-1, Ex. D.)

The statute provides that a defendant seeking compassionate release may bring a motion in federal court "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Because both parties agree that more than thirty days have passed since the

Defendant filed, and the warden received, his prior requests, the Court assumes that Defendant has satisfied the exhaustion requirement. See, e.g., United States v. Monsalvatge, No. 12-cr-586-02, 2025 WL 307137, at *3 (E.D.N.Y. Jan. 27, 2025) (acknowledging that there is a circuit split regarding whether an inmate is required to "administratively appeal[] the warden's denial of his request for sentence reduction," or alternatively, required only to "either exhaust administrative remedies or simply . . . wait 30 days after serving his petition on the warden of his facility before filing a motion in court," but concluding that because "[t]he warden's denial of [the defendant] was well outside of the 30-day waiting period . . . [he] was free to file his application with this Court.") (cleaned up).

**B. Merits**

In his motion, Defendant argues that his need to care for his elderly father, who has recently been diagnosed with Alzheimer's disease and dementia and has "rapidly deteriorated," constitutes an extraordinary and compelling reason for his release. (Mot. at 2.) Defendant states that his father now "requires continuous 24/7 full-time, home care support," and argues that he is the sole family member who can now provide that support, because Defendant's siblings live outside of the United States, Defendant's children are either minors or in school, and his father's ex-wife lives in Florida and has health complications of her own. (See id.) In support of his motion, Defendant has submitted his father's medical letters, as well as letters from various family members stating that Defendant is the best person to take care of his father.

Section 1B1.13(b)(3)(C) of the Sentencing Guidelines Manual provides that an extraordinary and compelling circumstance exists when a defendant's parent is incapacitated and the "defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). "However, district courts in this circuit 'generally require the defendant to provide several sources of evidence that the defendant is, in fact, the only available caregiver.'" United States v.

Monsalvatge, No. 12-CR-586-02, 2025 WL 307137, at *7 (E.D.N.Y. Jan. 27, 2025) (quoting United States v. Donato, No. 95-CR-223, 2024 WL 1513646, at *9 (E.D.N.Y. Apr. 8, 2024)); see also United States v. Lindsey, No. 13-CR-271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally require a showing of " 'evidence from several sources" indicating that the defendant "is the only available caregiver" for a family member in "dire conditions,' " before concluding that 'an extraordinary and compelling reason has been established.' " (quoting United States v. Ayala, No. 16-CR-809, 2020 WL 6626015, at *1 (S.D.N.Y. Nov. 12, 2020))).

Here, Defendant has failed to meet his burden to prove that he is the only available caregiver for his father. Although the Court is sympathetic to Defendant's desire to care for his father, Defendant has failed to show that his other living family members would be incapable of providing that care. For example, although Defendant claims that his siblings cannot care for his father because they live abroad, he fails to explain why their providing care would be impossible and not merely an inconvenience. See, e.g., United States v. Rodriguez, No. 20-CR-513, 2024 WL 1464661 (S.D.N.Y. Apr. 4, 2024) (finding no extraordinary and compelling circumstances existed when the defendant failed to submit evidence to "explain why, apart from inconvenience, some combination of . . . relatives could not sufficiently attend to his mother's medical needs"); United States v. Patel, No. 14-CR-158, 2021 WL 2941117, at *2 (S.D.N.Y. July 9, 2021), aff'd, No. 21-1746, 2022 WL 1634454 (2d Cir. May 24, 2022) (explaining that although the defendant "outlined the difficulties that his siblings will face in caring for his mother, in terms of balancing work, family, and, in the case of his brother, acclimating to the United States . . . these burdens do not constitute extraordinary and compelling reasons justifying his release."). The letters from his siblings also provide no evidence (beyond conclusory statements) that they would be unable to provide care. Moreover, although Defendant asserts, in conclusory fashion, that hiring a third-party provider is "absolutely not possible," he provides no explanation or supporting evidence for

that assertion. He has submitted no financial records or other evidence to establish that hiring a third-party provider or enrolling his father in institutional options would impose a financial burden on him.[2] Therefore, under these circumstances, Defendant has failed to show that his need to care for his father is an extraordinary or compelling circumstance warranting his release.

### C. Consideration of Section 3553(a) Sentencing Factors

Even if Defendant had established extraordinary and compelling reasons warranting his release, which he has not, the Section 3553(a) factors weigh against a sentence reduction.[3] Defendant participated in a thirteen-year fraud scheme in which he tricked thousands of victims, many elderly and vulnerable, into providing money by falsely promising prizes, and earned over $80 million in revenue. (See ECF No. 128 at 2.) This Court sentenced Defendant to a below-Guidelines term of 90 months, and his projected release to a halfway house is March 13, 2027. Granting his motion would mean that Defendant would be released prior to his projected release

---

[2] In its opposition, the Government argues that the Defendant's "refusal to complete required financial disclosures prior to sentencing and known use of foreign bank accounts" further undermines his argument of his purported inability to pay for third-party assistance. (Gov. Opp. at 6.) In the prior Order denying bail pending appeal, this Court previously noted Defendant's history of non-compliance with financial disclosures. (See, e.g., ECF No. 159 at 2 n. 1 (quoting the Government's arguments that "[i]n the years leading up to the original 2020 indictment, both defendants filed foreign bank account reports (FBARs) with the Treasury Department showing that they collectively possessed millions of dollars in foreign locations . . . with [Defendant] having the greatest share (over $3 million)," that Defendant "made no FBAR filings for any reporting year after 2020 (the year when criminal charges were first brought)," and that Defendant "declined to make financial disclosures in connection with his PSR").

[3] These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) [the kinds of sentences and sentencing range provided for in the USSG]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

date and would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Moreover, thousands of individuals, including many elderly and vulnerable victims, were seriously harmed by Defendant's conduct. A sentence reduction would also fail to reflect the seriousness of the offenses Defendant committed, fail to provide a just punishment for his conduct, and undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.

In sum, the Court concludes that Defendant should not receive a sentence reduction. Because the Court concludes that Defendant's motion for a sentence reduction lacks merit, Defendant's request for appointment of counsel is denied.

## III. CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED.

**SO ORDERED.**

Dated: November 24, 2026
Central Islip, New York

/s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE